(No. 91464.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. LAMONT JACKSON, Appellant.

*Opinion filed November 21, 2002.*

RARICK, J., took no part.
THOMAS, J., joined by GARMAN, J., dissenting.

Michael J. Pelletier, Deputy Defender, and Yasemin Eken, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Chicago, for appellant.

James E. Ryan, Attorney General, of Springfield, and Richard A. Devine, State's Attorney, of Chicago (William L. Browers, Assistant Attorney General, of Chicago, and Renee G. Goldfarb, Kenneth T. McCurry and Anne L. Asulin, Assistant State's Attorneys, of counsel), for the People.

JUSTICE KILBRIDE delivered the opinion of the court:

In this case, we consider for the first time whether, in a criminal bench trial, the State may present evidence relating to a witness' polygraph examination "for a limited purpose" if that purpose has not been established

prior to the admission of the evidence. We hold that it cannot.

Defendant, Lamont Jackson, was indicted in the circuit court of Cook County on several charges, including first degree murder (720 ILCS 5/9—1(a)(1), (a)(2), (a)(3) (West 1992)) and attempted armed robbery (720 ILCS 5/8—4, 18—2 (West 1992)). During defendant's bench trial, the State elicited polygraph testimony from one of its witnesses. Over defense counsel's objection, the trial court admitted the evidence "for a limited purpose" despite the absence of a legally valid purpose at that time.

The trial court subsequently found defendant guilty of first degree murder and attempted armed robbery. Defendant appealed, and the appellate court held that although it was error to admit the polygraph evidence, the error was harmless because the evidence had been considered by the trial court "for a limited purpose." 321 Ill. App. 3d 498, 505-06.

We allowed defendant's petition for leave to appeal (177 Ill. 2d R. 315) and now reverse and remand the cause for a new trial based on the improper admission of the polygraph evidence.

## BACKGROUND

Defendant and Jessie Williford were indicted on several charges, including first degree murder and attempted armed robbery, related to the July 13, 1996, death of a female shopper at Tops and Bottoms, a retail clothing store in Chicago. Williford initially denied any involvement in the crime, but after being confronted with the results of his polygraph test, he confessed in a court-reported statement, naming defendant as the shooter. In December 1998, Williford entered a guilty plea and was sentenced to concurrent prison terms of 25 years for the murder and 4 years for the attempted armed robbery.

In his court-reported statement to police, Williford claimed that he was driving with defendant on July 13, 1996, when defendant showed him a black semiautomatic pistol in his waistband. Williford then suggested robbing a store to get some money, and defendant agreed. The two men discussed their respective roles in the robbery: defendant would pull out the gun and yell "stickup" while Williford got the money from the cash register and gave it to defendant.

According to Williford, the men then drove to Trak Auto, where Williford remained in the car while defendant made some purchases. After defendant returned to the car, the two men decided to rob Tops and Bottoms, a retail clothing store. At some point after entering the store, defendant looked toward the back and raised his pistol. Williford, who was standing in another aisle, looked and saw a man near the back of the store. Williford then ducked and heard shots being fired behind him from defendant's position. When the shooting stopped, Williford ran to his grandmother's house.

Williford's statement concluded with averments that he had been treated well by the police and the assistant State's Attorney and that he had no complaints. In addition, he stated that he was not threatened or promised anything in exchange for his statement. Finally, Williford indicated that he was not under the influence of drugs or alcohol at the time and that the facts provided in the statement were true.

As for defendant, he initially denied any involvement in the crime. Later, he gave the police an inculpatory statement that was generally consistent with Williford's statement, but named Williford as the shooter.

Defendant subsequently waived his right to a jury trial. At defendant's bench trial, the State called Williford as a witness. On direct examination, Williford denied making any deals with the State's Attorney's office in

exchange for his testimony. He then gave testimony contradicting his prior inculpatory statement to police, insisting that neither he nor defendant had been in Tops and Bottoms on the day of the homicide and denying any involvement in a plan to rob the store. In response to this testimony, the State asked Williford whether he had taken a polygraph test and been told by the examiner that he was a "liar" just prior to making his inculpatory statement.

Defendant's counsel objected, arguing that Williford's polygraph examination was immaterial to defendant's case. The State countered that while polygraph evidence was inadmissible against defendant, it was admissible to show the "course of conduct" leading to Williford's prior inculpatory statement to the police. The trial court admitted the evidence, stating that it would be considered "for a limited purpose."

The State continued to question Williford about the polygraph test, and Williford indicated that after he had been confronted with the negative polygraph results, he admitted his involvement in the crime and implicated defendant as the shooter. He also acknowledged that he had changed his story "plenty of times." In addition, Williford claimed that he gave his statement "for his safety" and that he was suffering from severe heroin withdrawal and the police had promised to free him and not pursue first degree murder charges if he implicated defendant.

Defendant testified in his own defense, specifically denying any involvement in the attempted armed robbery and homicide at Tops and Bottoms or even being in the store that day. He maintained that he gave an inculpatory statement only after he had received a number of improper threats from the police and the assistant State's Attorney. According to defendant, these threats included charging him with first degree murder

based on Williford's statement to the police and barring him from ever seeing his children again unless he implicated himself in the crime and named Williford as the shooter.

The State also presented testimony from a detective who had interviewed both defendant and Williford, as well as the assistant State's Attorneys who had taken the inculpatory statements from the two men. Each of these witnesses denied using any threats, false promises, or other improper inducements to obtain statements from either defendant or Williford. They also denied advising defendant to protect himself by admitting his involvement in the robbery and naming Williford as the shooter. Furthermore, they maintained that the two men were treated well and never complained about their well-being or treatment while in police custody.

After considering the testimony of the witnesses and the arguments of the parties, the trial judge found defendant guilty of first degree murder and attempted armed robbery, sentencing him to 50 years in prison for the murder and 15 years in prison for the attempted armed robbery. Defendant's post-trial motions were denied, and he appealed.

The appellate court found that although the trial court erred by admitting evidence of Williford's polygraph examination, the error was harmless because Williford subsequently testified that his confession was " 'for his safety' " and based on false promises by the police. 321 Ill. App. 3d at 505. The court believed that because the State could have offered the polygraph evidence to refute Williford's claims of improper police conduct the error was one of timing, not substance. 321 Ill. App. 3d at 506. In addition, the appellate court excused the error because the trial court stated that it was considering the polygraph evidence "for a limited purpose," and judges are presumed to use evidence only for the stated purpose.

321 Ill. App. 3d at 506. Finally, the appellate court rejected defendant's arguments concerning the propriety of his sentencing hearing. 321 Ill. App. 3d at 507. This court subsequently allowed defendant's petition for leave to appeal. 177 Ill. 2d R. 315.

## ANALYSIS

Defendant argues that the admission of evidence concerning the polygraph test conducted prior to Williford's confession was reversible error because it violated the general rule barring polygraph evidence. He asserts that, although he failed to include this issue in his post-trial motion, this court should address it under the doctrine of plain error because it affected his substantial rights. See 134 Ill. 2d R. 615(a).

The State counters that plain error is a narrow exception to the general rule of waiver and should be applied only where the evidence is closely balanced or where the error has deprived defendant of a fair trial. *People v. Hampton*, 149 Ill. 2d 71, 100 (1992). The State asserts that neither condition is met here because the evidence of defendant's guilt was not closely balanced and the alleged error was not serious enough to have resulted in an unfair trial.

In *People v. Gard*, 158 Ill. 2d 191, 204-05 (1994), we addressed for the first time the applicability of the plain error doctrine when evidence relating to the polygraph examination of a witness other than the defendant is admitted in a criminal trial. During the defendant's trial, both the State and the defense in *Gard* made numerous references to the witnesses' polygraph examinations.

In our discussion of plain error, we focused on the inherent unreliability of polygraph testing. *Gard*, 158 Ill. 2d at 204-05. Noting that the scientific reliability of the evidence was not dependent on the test subject, we concluded that the general rule precluding the admission of a criminal defendant's polygraph test applied equally

to polygraph evidence obtained from a witness in a criminal trial. *Gard*, 158 Ill. 2d at 204. Our opinion explicitly acknowledged the lack of closely balanced evidence in the case, but still found plain error due to our strong concern for protecting and preserving the integrity and reputation of the judicial system. *Gard*, 158 Ill. 2d at 205. Thus, we held that "the admission of evidence of polygraph testing of witnesses at defendant's trial constituted plain error because it was error compromising the integrity and tarnishing the reputation of the judicial process itself." *Gard*, 158 Ill. 2d at 205.

Our rationale in *Gard* was largely premised on our prior decision in *People v. Baynes*, 88 Ill. 2d 225 (1981). In *Baynes*, this court held that evidence relating to the polygraph testing of a criminal defendant was inadmissible because it did not have sufficient indicia of reliability. Consequently, the prejudicial effects of admitting the evidence substantially outweighed its probative value. *Baynes*, 88 Ill. 2d at 244. Moreover, the admission of polygraph evidence constituted "an unwarranted intrusion" into the trier of fact's role in determining the credibility of the witnesses. *Baynes*, 88 Ill. 2d at 244.

Based on these considerations, we concluded that the admission of the defendant's polygraph evidence rose to the level of plain error because it "impinge[d] upon the integrity of our judicial system." *Baynes*, 88 Ill. 2d at 244. We reached this conclusion despite a stipulation by the defendant that the test results would be admissible, reasoning that a mere stipulation cannot reduce the danger that admitting scientifically unreliable tests would undermine the judicial process. *Baynes*, 88 Ill. 2d at 233-34.

In the instant case, the State attempts to distinguish our prior analyses, asserting that any error that may have occurred did not adversely affect the judicial process. It fails, however, to offer any explanation for

this conclusion, and we are unable to conceive of any justification for it in light of our reasoning in *Gard* and *Baynes*.

The State next claims that *Gard* is factually distinguishable because the jury in that case was permitted to consider the polygraph evidence for any purpose, while here a trial judge considered it only "for a limited purpose." As the appellate court noted, "[i]n a bench trial if the court has admitted evidence for a limited purpose the court is presumed to only have considered it for that purpose." 321 Ill. App. 3d at 506, citing *People v. Avery*, 227 Ill. App. 3d 382, 392 (1991). In reviewing the State's argument, we must consider the possible distinctions both between a jury and a judge serving as the fact finder and the use of polygraph evidence for general versus "limited" purposes. We turn first to the question of how the identity of the fact finder impacts our analysis.

As in *Gard*, our overriding concern in this case is the preservation of the integrity of the judicial process. See *Gard*, 158 Ill. 2d at 205. We have long recognized that, generally, the admission of polygraph evidence unjustifiably intrudes on the trier of fact's ability to weigh the credibility of the witnesses. *Baynes*, 88 Ill. 2d at 244. The identity of the trier of fact in any specific case cannot imbue inherently unreliable polygraph evidence with reliability or lessen the damage to the integrity and reputation of the judicial process caused by admitting scientifically unreliable evidence. See *Baynes*, 88 Ill. 2d at 239-40. The same principles control regardless of whether the trier of fact is a panel of competent jurors or an experienced trial judge. *People v. Yarbrough*, 93 Ill. 2d 421, 426-27 (1982). Thus, we reject the State's argument that this case is distinguishable from *Gard* and *Baynes* because here the trier of fact was a trial judge, not a jury.

As for the State's argument that the evidence was properly considered "for a limited purpose," we initially

note that the trial court did not clearly define this "limited purpose." From our review of the record, we conclude that the judge intended to consider the evidence as part of the "course of conduct" leading to Williford's inculpatory statement to the police. Based on that limited purpose, we address the State's argument that the evidence was properly admitted.

The State cites *People v. Jefferson*, 184 Ill. 2d 486 (1998), in support of its contention that the polygraph evidence was properly admitted to establish the sequence of events leading to Williford's inculpatory statement because he claimed his statement was procured by the use of threats and false promises from the police and the assistant State's Attorney. For the reasons that follow, we believe the State's reliance on *Jefferson* is misplaced.

In *Jefferson*, this court affirmed the trial court's admission of rebuttal evidence showing that the defendant confessed after agreeing to undergo a polygraph examination the next day. Notably, prior to the admission of the polygraph evidence, the defendant in *Jefferson* claimed at trial that she confessed because the police had promised her that if she gave a statement she would be released from custody to see her child, whom she had been told had only hours to live. We held that the defendant's claim of police misconduct opened the door to the introduction of the polygraph agreement for the limited purpose of establishing an alternative explanation for the defendant's confession. *Jefferson*, 184 Ill. 2d at 495. If the State's polygraph evidence had not been allowed, the trier of fact would have been misled by the defendant's prior testimony concerning the circumstances preceding her confession. *Jefferson*, 184 Ill. 2d at 496.

In contrast, the polygraph evidence in the instant case was presented during the State's direct examination of Williford, *prior to his claim of police coercion*. At the

time the evidence was admitted, it served no proper legal purpose. The appellate court incorrectly reasoned that the trial court in this case must be presumed to have considered the evidence for a proper limited purpose. Where, as here, there is no legally proper purpose at the time the evidence is admitted, we will not afford the trial court that presumption. For this reason, we cannot agree with the appellate court's conclusion that the introduction of polygraph evidence before the witness has opened the door to its admission was merely a harmless timing error. See 321 Ill. App. 3d at 506.

In *Jefferson*, the State used the polygraph evidence as a shield against the defendant's allegation of police misconduct. Here, the State attempted to use the evidence affirmatively as a sword to advance its own case. Moreover, the State's premature introduction of the polygraph evidence may have actually compelled Williford to justify his prior actions by claiming coercion in his subsequent testimony. We did not approve the offensive use of polygraph evidence in *Jefferson*, and we will not now allow the State to create a straw man only to knock him down, all within its own case in chief.

The dissent criticizes this decision, asserting that in a new trial the same evidence will be admitted, only in a different order. While this may be true,

> "let it be again remembered that delays and little inconveniences in the forms of justice are the price that all free nations must pay for their liberty in more substantial matters; that these inroads upon this sacred bulwark of the nation are fundamentally opposite to the spirit of our constitution; and that, though begun in trifles, the precedent may gradually increase and spread to the utter disuse of juries in questions of the most momentous concern." 4 Blackstone, Commentaries *350.

See also *Bollenbach v. United States*, 326 U.S. 607, 614-15, 90 L. Ed. 350, 355-56, 66 S. Ct. 402, 406 (1946). Moreover, "[a]ll law is technical if viewed solely from concern for punishing crime without heeding the mode

by which it is accomplished." *Bollenbach*, 326 U.S. at 614-15, 90 L. Ed. at 355, 66 S. Ct. at 406.

Here, requiring the State to offer some legally valid foundation prior to admitting inherently unreliable and prejudicial evidence seems but a small intrusion on judicial expediency in light of this court's long-standing general bar on polygraph evidence. Surely, the integrity and reputation of the judicial process merits such minimal protection. While formal requirements may often be scorned because they do not serve the ends of expediency, this court must apply a longer view. *Neder v. United States*, 527 U.S. 1, 40, 144 L. Ed. 2d 35, 66, 119 S. Ct. 1827, 1848 (1999) (Scalia, J., concurring in part and dissenting in part, joined by Souter and Ginsburg, JJ.).

While in this case the State had the good fortune to obtain subsequent testimony from Williford that may have justified the introduction of the polygraph evidence to refute his claim of coercion under our rationale in *Jefferson*, in many other cases, the State will not be so fortunate. It would be unwise to allow the State to procure otherwise inadmissible and potentially damaging polygraph evidence in the speculative hope that a witness will later justify its admission. If the justification does not materialize, then the admission of the unreliable evidence has done irreparable damage to both the individual defendant's case and the integrity of the entire judicial process.

If the State wishes to admit polygraph testimony to flesh out the circumstances surrounding a confession, it may attempt to do so only in the limited circumstances outlined in *Jefferson*. We will not condone the anticipatory introduction of polygraph evidence by the State.

As for the dissent's claim that the polygraph evidence was merely elicited to show Williford's state of mind at the time he made his confession, the State itself never tendered that explanation to the trial court, insisting

instead only that the evidence was offered to show the witness' "course of conduct." Thus, we need not address the merits of the dissent's proffered speculation.

Accordingly, we conclude there was no proper "limited purpose" for the trial court's admission of the State's polygraph evidence in this case. In light of our holding on this issue, we need not and do not reach the merits of defendant's other argument on appeal.

## CONCLUSION

We hold that it is plain error to admit polygraph evidence in a criminal trial in anticipation of evidence potentially justifying its admission as an alternative explanation for an inculpatory statement. This is true regardless of whether the case is tried before a judge or a jury.

In light of our disposition of this case, we need not reach the merits of defendant's other argument on appeal, claiming that the admission of multiple victim impact statements at his sentencing hearing violated his due process rights.

The judgments of the appellate court and the trial court are therefore reversed, and the cause is remanded to the circuit court for further proceedings consistent with this opinion.

*Appellate court judgment reversed;*
*circuit court judgment reversed;*
*cause remanded.*

JUSTICE RARICK took no part in the consideration or decision of this case.

JUSTICE THOMAS, dissenting:

Like the appellate court, I believe that the premature admission of evidence relating to Williford's polygraph examination was harmless beyond a reasonable doubt. I therefore respectfully dissent.

Plain error is a limited and narrow exception to the general waiver rule, to be invoked only where the evidence is closely balanced or the alleged error is so substantial that it deprived the defendant of a fair trial. *People v. Kuntu*, 196 Ill. 2d 105, 128 (2001). The second prong of the plain error exception is to be invoked only where the alleged error is so serious that its consideration is necessary to preserve the integrity and reputation of the judicial process. *Kuntu*, 196 Ill. 2d at 128. Here, the evidence of defendant's guilt was not closely balanced. Thus, the plain error doctrine applies only if the premature admission of evidence relating to Williford's polygraph examination threatens the integrity and reputation of the judicial process. As the majority's own analysis demonstrates, however, the integrity and reputation of the judicial process is not the least bit at risk in this case.

First, the majority concedes that, under *Jefferson*, the State could have solicited evidence relating to Williford's polygraph examination to rebut Williford's subsequent claim of police coercion. 202 Ill. 2d at 372. According to the majority, then, the "integrity of the entire judicial process" (202 Ill. 2d at 372) is at risk because, in an isolated case, the trial court entertained perfectly admissible evidence a little bit too soon. Stated differently, the majority is convinced that the evidentiary error that occurred in this case is of such magnitude as to threaten "the integrity of the entire judicial process." 202 Ill. 2d at 372. Yet the majority's remedy is to remand this cause for a new trial at which the *exact same evidence* will come in, only in a slightly different order. Surely, if the judicial system's integrity is as fragile as the majority suggests, something more than mere formalism is called for.

Second, and more importantly, the majority's concern for the judicial system's integrity is based not upon what

happened in this case but upon what *would* happen if the facts of this case were exactly the opposite of what they are. As the majority explains:

> "While in this case the State had the good fortune to obtain subsequent testimony from Williford that may have justified the introduction of the polygraph evidence to refute his claim of coercion under our rationale in *Jefferson*, in many other cases, the State will not be so fortunate. It would be unwise to allow the State to procure otherwise inadmissible and potentially damaging polygraph evidence in the speculative hope that a witness will later justify its admission. If the justification does not materialize, then the admission of the unreliable evidence has done irreparable damage to both the individual defendant's case and the integrity of the entire judicial process." 202 Ill. 2d at 372.

Thus, according to the majority, "irreparable damage to both the individual defendant's case and the integrity of the entire judicial process" occurs only when a justification for the "otherwise inadmissible and potentially damaging polygraph evidence" does not materialize. This may or may not be true. But what is undeniable is the fact that, in this case, the necessary justification *did* materialize. Consequently, under the majority's own analysis, *no harm* was done to either this defendant's case or the integrity of the entire judicial process, and no plain error occurred.

The bottom line is that the error that occurred in this case was harmless. It is well established that, in a bench trial, the judge is presumed to consider evidence only for its proper purpose. *People v. Lewis*, 30 Ill. 2d 617, 622 (1964). Under *Jefferson*, the State may properly introduce evidence relating to a polygraph examination to rebut a witness' claim that his or her statement was the product of coercion. *Jefferson*, 184 Ill. 2d at 496. Here, the State introduced evidence relating to Williford's polygraph examination before any claim of coercion was made. While the trial court should have sustained

defense counsel's objection at that point, the fact remains that Williford shortly thereafter asserted that his statement was coerced. At this point, the evidence relating to Williford's polygraph examination became perfectly admissible. Thus, any error that the trial court committed in admitting the evidence in the first instance was at worst harmless and at best cured entirely.

As for the majority's concern that "the State's premature introduction of the polygraph evidence may have actually compelled Williford to justify his prior actions by claiming coercion in his subsequent testimony" (202 Ill. 2d at 371), I have two responses. First, absolutely nothing in the record supports the majority's conjecture. Second, and more importantly, the majority's conjecture is logically untenable. The majority apparently believes that, had the State not asked Williford about his polygraph results, Williford might never have mentioned the coercion that led to his signed and sworn confession. What the majority's theory overlooks, however, is that Williford had just testified that the signed and sworn confession that landed him 25 years in prison was a *complete fabrication.* Surely, the majority cannot believe that, had the State not asked Williford about his polygraph results, Williford's testimony would have concluded without either side inquiring as to *why* Williford not only gave a false confession but also pleaded guilty and accepted 25 years in prison on the basis of that confession. Of course those questions would have been asked, and of course Williford's claim of coercion would have come out at that time.

As a final matter, I wish to note that, while the majority talks a great deal about "the inherent unreliability of polygraph testing" (202 Ill. 2d at 367), "sufficient indicia of reliability" (202 Ill. 2d at 368), and "scientifically unreliable tests" (202 Ill. 2d at 368), none of these concerns are implicated in this case. This is because the

State never introduced the results of Williford's polygraph examination. Indeed, after reading the majority opinion, one would think that the State not only introduced those results but also argued that they constitute scientific proof that Williford lied during his polygraph examination. In fact, the only thing that the State introduced was Williford's *understanding* of his polygraph results, and it did so only as evidence of Williford's *state of mind* at the time he gave his inculpatory statement. As with all state of mind evidence, the purpose of this testimony was to show what the witness *believed* at a certain relevant time, not whether that belief was in fact true. That the State was interested in eliciting evidence only of Williford's state of mind is demonstrated by the fact that, from the record, we have no idea (1) what Williford was asked during his polygraph examination, (2) whether Williford in fact failed his polygraph examination, or (3) whether Williford even *took* a polygraph examination. All we know is that, at the time he confessed, Williford *believed* he had just failed a polygraph examination. Whether or not this evidence is admissible, its reliability has nothing to do with a polygraph's scientific integrity.

For these reasons, I dissent.

JUSTICE GARMAN joins in this dissent.