SECOND DIVISION

March 8, 2005

No. 1-03-2420

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from the

) Circuit Court of

Plaintiff-Appellee, ) Cook County.

)

v. ) Nos. 02 CR 12464

) 02 CR 12465

)

ROMAN GUERRERO,           ) Honorable

) James B. Linn,

Defendant-Appellant. ) Judge Presiding. 

JUSTICE WOLFSON, delivered the opinion of the court:

Following a bench trial, defendant Roman Guerrero was convicted of aggravated criminal sexual abuse of minor S.M. (case number 12464) and minor M.C. (case number 12465) and sentenced to concurrent prison terms of six years.  On appeal, defendant contends that the indictments charging him with aggravated criminal sexual abuse failed to sufficiently specify when and where the alleged offenses occurred and, therefore, violated his right to be informed of the nature and cause of the criminal accusations made against him, his due process rights and section 111-3(a) of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/111-3(a) (West 2002)).  Defendant also contends the trial court erred in admitting evidence that defendant was offered a polygraph examination but gave an inculpatory statement before taking the examination.  We affirm.

Defendant was charged, in relevant part, with the aggravated criminal sexual abuse of minor S.M. (case number 12464) for conduct "on or about February 23, 1999 and April 8, 2002, at and within the County of Cook."  Defendant was also charged, in relevant part, with the aggravated criminal sexual abuse of minor M.C. (case number 12465) for conduct "on or about February 24, 1999 and continuing through April 16, 2002, at and within the County of Cook."

Prior to trial, defense counsel requested a bill of particulars, alleging there was insufficient specificity as to the times and locations of the charges.  The court told the State "to make a good faith effort to try to pin [down] these *** [d]ates, times and locations."

At the next proceeding, the State informed the court that it met with one of the victims and the closest it could narrow down one of the incidents to was several days after Christmas in 2001.  Defense counsel noted that one, if not both, of the children indicated that the abuses started in 1999.  Defense counsel stated that he did not have a problem with the date April 8, 2002, but did with the other periods of time provided.  The court noted that the case involved child victims, making it difficult to specify dates, and it did not know if the State was "in a position to make it much better *** [but] this does affect the weight to be given to that testimony."  Defense counsel stated that defendant indicated there were witnesses present, and therefore, he "need[ed] to know when this happened so I can find out whether or not the witnesses were, in fact, there."  The court then asked how many different incidents of abuse were going to be alleged at trial.  The State answered that it asked one of the children how often it occurred over the three years, and the child indicated every other week.  The court stated that:

"It may not be possible to get specific dates on this kind of case.  But potential people that were home when these things happened, that is possible. That you can have."

Thereafter, the State filed the bill of particulars in the case for S.M., which provided:

"DATE: On or about February 23, 1999 continuing through April 8, 2002, including on or about December 25, 2001.

LOCATION: At or near 2059 W. 19
th
 St, 1922 W. Carpenter, and 1922 W. Cullerton, Chicago, Illinois."

The bill of particulars in the case for M.C. listed the same locations and provided the following date:

"On or about February 24, 1999 continuing through April 16, 2002, including on or about February 24, 2002."

Both bills of particulars also listed who resided at each location.

At the next court date, the State indicated that it had specific dates for the incidents: one occurred after one of the children's birthday and one was after Christmas.  The court asked "how many days after."  The State responded that "it's on or about," not a month later but either a week or two or a few days later.  Defense counsel stated that it would be impossible to defend the case.  The court then stated:

"When you have these types of cases where the complainants are children, when they make very late outcries, their age and limitations *** [make it] hard to narrow it down.  All I can demand the State to do is make their best effort to narrow it down. *** On the other hand, if it indicates that the weight of their evidence may have some problems as well, it's a double edge sword.  It's harder to defend and harder to prosecute also because the government can't even say whether the crime happened.  That certainly goes to the weight to be given to their testimony. *** I am persuaded now that they have made their best efforts to narrow it down.  But I'll take her explanation that it's within a couple weeks and something happens at trial beyond that and then that will be at the government's peril."

At trial, S.M. testified that she was born on February 23, 1993.  Both S.M. and M.C. testified that they were currently 10 years old, cousins, and defendant was their uncle.  S.M. stated that she lived with her grandma at 2059 West 19th Street and Hoyne in Chicago and still resides there.  S.M. stated that when defendant molested her for the first time, he was living with her, she was six or seven years old, the incident occurred in her bedroom at 2059 West 19th Street and Hoyne, and she was with M.C.  S.M. then testified that the first incident occurred at a "different house," and defendant lived with her family only at 2059 West 19th Street and Hoyne.  She did not recall the address of the "different house" or what year it was.  M.C. testified that the incident took place at S.M.'s home near Hoyne.

S.M. and M.C. testified that defendant came into S.M.'s bedroom while they were playing with Barbie dolls.  Defendant told them to come near him.  S.M. testified that she and M.C. immediately obeyed defendant.  M.C., however, testified that they ignored defendant at first but when he yelled at them, they went to him.  Defendant then molested the children.  S.M. testified that after the incident, defendant continued to molest M.C.

S.M. testified that defendant molested her again a couple of months later while he was living at her home located at 2059 West 19th Street and Hoyne.  There was a block party going on outside, and it was summertime.  Defendant molested S.M. when she came inside the house to get some water.

M.C. testified that defendant molested her for the first time when she was in her bedroom at her home.  M.C. did not recall the date or year or the address of the home.  M.C. testified that she told her mother about the incident when they lived at 19th and Cullerton in Chicago, but then she stated:

"Well, actually it was at another house when my ma was half sleeping and I told her and, uhm, *** she could hear me.  So after like a few months later she moved out of that house and, uhm, she moved in another house and I told her when we were watching cartoons that he touched me and *** [S.M.]"

M.C. stated that her father lived with her when the first incident occurred but no longer does.

Officer Arlen Piotrowski was called as a witness by the State and testified that on April 16, 2002, the children reported the abuses.  The officer stated that defendant turned himself in on that day and denied the allegations against him.  Defendant agreed to take a polygraph examination and was taken to Officer Bartek for the examination.  Defense counsel then objected to the polygraph testimony.  The court stated that:

"the government will be allowed to elicit in the sequence of events.  At one point they went to a polygraph examiner's location and that certain things may have been said independent of any polygraph exam."

Officer Piotrowksi then testified that before the exam was administered, defendant confessed to Officer Bartek.  Defendant also confessed to Officers Hollendoner and Piotrowski and Assistant State's Attorney (ASA) Cheryl Wronkiewicz.  The ASA testified that defendant told her he molested S.M. on at least three occasions.  A written statement was not taken because defendant was illiterate.  The ASA memorialized defendant's statement in her felony review folder.  Officer Piotrowksi testified that defendant told him that he was residing at 2059 West 19th Street since the year 2000.

During closing arguments, defense counsel argued that: 

"[The children] don't know dates, times.  They didn't even know years. *** The only thing they can tell you is that it happened in their life time. *** It is impossible for [defendant] to defend himself against this case if he doesn't know when, he doesn't know where, and who, if anybody else, was present when this all allegedly occurred."

Defense counsel further argued that the children were not credible based on the inconsistencies in their testimony, their inability to specify dates and locations, and M.C.'s sarcastic tone.  Defense counsel also asserted that the officers failed to take any safety precautions in obtaining a statement from an illiterate defendant.

At the close of the evidence, the court found defendant guilty of aggravated criminal sexual abuse in both cases.  The court did not mention the polygraph evidence during its ruling.  Thereafter, defendant filed a post-trial motion, which the court denied.  At the sentencing hearing, defendant informed the court that when the abuses occurred, he was living in Sterling Rock Falls, Illinois.  Defendant further stated that:

"If the officer would have gave me the polygraph right when they were supposed to give it to me, your Honor, I wouldn't be here."

The court sentenced defendant to six years in each case, to run concurrently.

On appeal, defendant contends that the indictments charging him with aggravated criminal sexual abuse failed to sufficiently specify when and where the alleged offenses occurred and, therefore, violated: his right to be informed of the nature and cause of the criminal accusations made against him, his due process rights, and section 111-3(a) of the Code (725 ILCS 5/111-3(a) (West 2002)).  In particular, defendant argues the children's testimony establishes that the dates in the indictments could have been more limited, and the dates listed in the bill of particulars, namely December 25, 2001, and February 24, 2002, were "red herrings," which diverted defendant's resources to properly investigate and defend the case.

We review 
de novo 
the sufficiency of the charging instrument.  
People v. Brogan
, 352 Ill. App. 3d 477, 485, 816 N.E.2d 643 (2004). Section 111-3(a) of the Code provides that an indictment shall set forth "the date and county of the offense as definitely as can be done."  725 ILCS 5/111-3(a)(4) (West 2002).  The State is not required to prove the precise date on which the offenses occurred, but must at least give some indication in the indictment as to when the offenses occurred.  
People v. Long
, 55 Ill. App. 3d 764, 771-72, 370 N.E.2d 1315 (1977).  A bill of particulars cannot cure a void indictment but can protect a defendant in a case in which he is unable to formulate his defense.  
Long
, 55 Ill. App. 3d at 772.

The date of the offense is not an essential factor in child sex offense cases.  
People v. Burton
, 201 Ill. App. 3d 116, 123, 558 N.E.2d 1369 (1990); 
People v. Barlow
, 188 Ill. App. 3d 393,  402-03, 544 N.E.2d 947 (1989).  In cases involving the sexual abuse of a child, flexibility is permitted regarding the date requirement necessary under the Code.  
People v. Harris
, 187 Ill. App. 3d 832, 843, 543 N.E.2d 859 (1989), abrogated on other grounds by 
People v. Fern
, 189 Ill. 2d 48, 723 N.E.2d 207 (1999); 
Long
, 55 Ill. App. 3d at 772.  As long as the crime occurred within the statute of limitations and prior to the return of the charging instrument, the State need only provide the defendant with the best information it has as to when the offenses occurred.  
Burton
, 201 Ill. App. 3d at 123; 
Barlow
, 188 Ill. App. 3d at 402.

We find 
Harris
 and 
Burton
 instructive.  In 
Harris
, the defendant was charged with sexual abuse offenses against a seven-year-old. 
 The dates provided to the defendant in the indictment spanned some six months, but because of the age of the victim and the fact that the acts occurred over a period of six months, the dates were acceptable.  
Harris
, 187 Ill. App. 3d at 843.  In 
Burton
, the defendant was charged with sexual abuse offenses of two girls under 13 years of age.  The defendant challenged the State's claim that it could provide no more specific information other than that the offense of aggravated criminal sexual assault occurred sometime between January 1986 and September 1988.  The defendant argued that the 33-month range made it impossible for him to defend.  The court held that the fact the defendant suffered some prejudice, without more, did not justify dismissing the charges against him, particularly where the children are the alleged victims of sex abuse.  
Burton
, 201 Ill. App. 3d at 123.  The reviewing court further held that the trial court did not err in denying the defendant's motion to dismiss the count in question where the crime occurred within the applicable statute of limitations period and the State provided the defendant with the best information it had regarding when the offenses occurred.  
Burton
, 201 Ill. App. 3d at 122-23.

Here, the children were first molested when they were about six years old and the indictments and bill of particulars indicated that the children were molested over a three-year time period.  In light of the children's young age and the fact that the acts occurred over a period of three years, the dates provided in the indictments were as definite as possible.  See 
Burton
, 201 Ill. App. 3d at 123 (a range of two years and nine months held to be the best information possible where very young children were the victims of sex abuse).  As this court reasoned in 
Burton
, "[t]o hold otherwise would be to jeopardize large numbers of such prosecutions, particularly with very young children, simply because they could not provide specific dates and times."  
Burton
, 201 Ill. App. 3d at 123.

Furthermore, contrary to defendant's contention, the indictments provided the location in compliance with section 111-3 of the Code.  The indictments indicated that the offenses occurred in Cook County, and the bill of particulars then listed specific addresses where the incidents occurred.  See 725 ILCS 5/111-3(a)(4) (West 2002) (the indictment shall set forth the county of the offense as definitely as possible).

Defendant, however, contends that the State could have limited the time periods as follows: (1) narrow the dates based on the date S.M.'s family moved to 2059 West 19th Street because she testified that the first incident occurred at a different address; (2) exclude the time period after M.C.'s father moved out because M.C. testified that her father only resided with her during the time of the abuses; (3) narrow the dates based on the date M.C.'s family moved because M.C. testified that her family moved during the time of the abuses; and (4) narrow the dates based on defendant's statement that he resided with S.M.'s family only since 2000.

First, the State indicated prior to trial that one of the girls said that the incidents occurred every other week, rendering it difficult for the State to exclude any dates during the three-year time span.  Second, S.M. testified that the first incident occurred at 2059 West 19th Street and Hoyne, but also testified that the first incident occurred at a different address.  M.C. indicated that the abuse happened at the address near Hoyne.  Clearly, based upon this testimony, it is not evident where the first abuse occurred, and therefore, the State could not narrow the time periods down based on when S.M.'s family moved.  Furthermore, the date M.C.'s family moved would not limit the time period as M.C. did not indicate that the incidents stopped occurring when she moved.  The date M.C.'s father moved out also would not narrow the time period because M.C. merely indicated that her father resided with her family when the first incident occurred but no longer does.  M.C. did not testify as to whether the second incident occurred after or before her father moved, and we cannot enter into such speculation.  See 
People v. Colon
, 20 Ill. App. 3d 858, 864, 314 N.E.2d 664 (1974) (reviewing court cannot speculate as to facts that do not appear in the record).  Further, the time period could not have been narrowed down based on defendant's statement to the police that he started residing with S.M.'s family in 2000.  Although S.M. testified that the first incident occurred when defendant resided with her family at 2059 West 19th Street, she also testified that the first incident occurred at a "different house," and defendant only lived with her family at the 2059 West 19th Street address.  In light of the difficulties the children had in pinpointing the exact times and places of the sex abuses, the State narrowed the dates down as best as it could.

Furthermore, December 25, 2001, and February 24, 2002, were not "red herrings."  The State informed the court prior to trial that one of the children had specifically indicated that an incident had occurred around Christmastime.  The State obviously obtained the dates based on interviews with the children.  Moreover, defendant was able to present his defense.  

Defense counsel argued that the children were incredible based on their different accounts of the first incident that happened while they were in S.M.'s bedroom, their inability to recall specific dates, and M.C.'s sarcastic tone.  Defense counsel also argued that the officers failed to take proper safety precautions in obtaining an admission from an illiterate defendant.  Accordingly, defendant was not deprived of due process; the indictments stated the dates and locations as definitely as possible, the dates alleged in the indictments were not a material element of the offenses, the dates were sufficient to show that the offenses charged were committed within the statute of limitations period, and the dates preceded the return of the indictments.

Defendant also argues that the indictments do not protect him against double jeopardy.  A prior prosecution can easily be proven by reference to the record, thereby protecting a defendant from being placed in double jeopardy.  
Long
, 55 Ill. App. 3d at 773.  Here, the offenses defendant was convicted of can easily be discerned from the record. 

Next, defendant contends the trial court erred in admitting evidence that he offered to take a polygraph examination but then gave an inculpatory statement before taking the examination.

Although defendant failed to raise this issue in a post-trial motion, we will address it under the plain error doctrine.  See 
People v. Jackson
, 202 Ill. 2d 361, 368, 781 N.E.2d 278 (2002).  We find no error.

In general, the rule in Illinois is to preclude the introduction of evidence regarding polygraph examinations and their results.  
People v. Jefferson
, 184 Ill. 2d 486, 492, 705 N.E.2d 56 (1998); 
People v. Fletcher
, 328 Ill. App. 3d 1062, 1074, 768 N.E.2d 72 (2002).  The rationale behind the rule is that polygraph evidence is not sufficiently reliable for admission and, if admitted, is likely to be taken as determinative of guilt or innocence.  
Fletcher
, 328 Ill. App. 3d at 1074.  There are, however, exceptions to the rule of exclusion.  
Jefferson
, 184 Ill. 2d at 493.

In 
Jefferson
, the supreme court held that evidence of a scheduled polygraph examination was admissible.  
Jefferson
, 184 Ill. 2d at 496.  The defendant in 
Jefferson
 testified at trial that she signed an inculpatory statement because the officer told her that if she signed the statement, she could go home.  While cross-examining the defendant, the State sought to present evidence regarding the defendant's agreement to take a polygraph test and her subsequent decision to confess prior to taking the scheduled polygraph.  The trial court allowed the introduction of the evidence over defense counsel's objection.  The supreme court held that the scheduled polygraph test was offered for the proper limited purpose of explaining the circumstances surrounding the defendant's confession after the defendant claimed at trial that her confession was induced by promises of lenient treatment.  
Jefferson
, 184 Ill. 2d at 495-96.

In 
Jackson
, however, the supreme court held that the trial court erred in allowing the admission of evidence of negative polygraph test results.  
Jackson
, 202 Ill. 2d at 373.  In 
Jackson
, the defendant and his codefendant were charged with first degree murder and attempted armed robbery.  The codefendant denied being involved in the crimes but after being confronted with the negative results of his polygraph test, he confessed and pleaded guilty.  At the defendant's bench trial, the codefendant denied making any deals with the State in exchange for his testimony and then contradicted his prior inculpatory statement.  The State then asked the codefendant whether he had taken a polygraph test and was told by the examiner that he was a "liar" prior to confessing.  Defense counsel objected, and the State responded that it was eliciting the evidence to show "course of conduct" leading to the codefendant's prior inculpatory statement.  The trial court admitted the evidence, noting it would consider it "for a limited purpose."  
Jackson
, 202 Ill. 2d at 365.  The codefendant, in response to further questions from the State, testified that after he was confronted with the negative results of his polygraph test, he admitted his involvement in the crime and implicated the defendant.  The supreme court noted that the trial judge did not define the limited purpose but it concluded from its review of the record that the trial court was considering the evidence as part of the course of conduct leading to the codefendant's confession.  
Jackson
, 202 Ill. 2d at 369-70.  The supreme court found that there was no proper legal purpose at the time the evidence was admitted, and, therefore, it could not presume that the evidence was considered for a proper limited purpose.  
Jackson
, 202 Ill. 2d at 371.

We find 
Jackson
 is distinguishable from the present case, which is more like 
Jefferson
.  Here, the trial court did not admit the results of another witness' polygraph test but, instead, merely admitted evidence of a scheduled polygraph exam, as in 
Jefferson
.  Further, unlike 
Jackson
, the trial court also defined its limited purpose on the record:

"the government will be allowed to elicit in the 
sequence of events
.  At one point they went to a polygraph examiner's location and that certain things may have been said 
independent
 of any polygraph exam."

The trial court permitted the State to refer to defendant's scheduled polygraph examination solely for the purpose of detailing the sequence of events.  In 
Jackson
, where the trial court admitted the negative results of the polygraph test, it acted outside its alleged limited purpose of showing the codefendant's course of conduct.  Course of conduct simply involves listing the order of events but does not entail disclosing the substance of the events.  Therefore, in 
Jackson
, there "was no legally proper purpose at the time the evidence [was] admitted."  
Jackson
, 202 Ill. 2d at 371.

Here, there was a proper purpose at the time the evidence was admitted.  The trial court said the polygraph test would be admitted for the purpose of sequencing the order of events, the court noted that any statements made were independent of the polygraph exam, and the polygraph evidence admitted did not go beyond the sequence of events purpose.  See generally 
Fletcher
, 328 Ill. App. 3d at 1074-75 (where the trial court stated on the record that evidence of a scheduled polygraph test was considered for the "limited, purpose of explaining the status of what happened on a certain day at a certain time," the reviewing court was convinced that the trial court did not consider the polygraph evidence in reaching its result).  Furthermore, the court's statement that "certain things may have been said 
independent
 of any polygraph exam" shows it was well aware it could not consider the effect of the scheduled polygraph test on any statements made by defendant.  As in 
Jefferson
, the trial court merely allowed the admission of evidence of defendant's scheduled polygraph examination based on a limited purpose and did not go beyond that purpose.  Accordingly, we conclude that the trial court did not err in allowing the reference to the scheduled polygraph examination.

For all the foregoing reasons, we affirm the trial court's judgment.

Affirmed.

HALL, and Garcia, JJ., concur.