**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (3d) 210594-U

Order filed March 27, 2023

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 9th Judicial Circuit, Warren County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-21-0594 Circuit No. 19-CF-82 |
| | ) | |
| CESAR CARILLO-CRUZ, | ) ) | Honorable Richard H. Gambrell, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE PETERSON delivered the judgment of the court.
Justice Davenport concurred in the judgment.
Justice McDade specially concurred.

**ORDER**

¶ 1    *Held*:  (1) The State proved defendant guilty beyond a reasonable doubt of predatory criminal sexual assault of a child, (2) defendant received effective assistance of counsel, (3) the court did not err in admitting the People's exhibit Nos. 1A and 1B, and (4) defendant forfeited plain error review of his excessive sentence argument.

¶ 2    Defendant, Cesar Carillo-Cruz, appeals his conviction for predatory criminal sexual

assault of a child. Defendant argues: (1) the State failed to prove his guilt beyond a reasonable

doubt, (2) he received ineffective assistance of counsel, (3) the court erred in admitting the People's exhibit Nos. 1A and 1B, and (4) his sentence is excessive. We affirm.

¶ 3                                                    I. BACKGROUND

¶ 4        The State charged defendant with predatory criminal sexual assault of a child (720 ILCS 5/11-1.40(a)(1) (West 2018)). The complaint alleged:

> "[t]hat between January 1, 2014, and December 31, 2017, in Warren
> County, Illinois, [defendant] committed the offense of predatory criminal sexual
> assault of a child in that the said defendant, who was 17 years of age or older
> when the act was committed (d.o.b. 08/13/84), knowingly committed an act of
> contact, however slight, between the sex organ of one person and the part of the
> body of another, V.P. (d.o.b. 03/05/08), who was under 13 years of age when the
> act was committed, in that the defendant placed his penis on her V.P.'s vagina, for
> the purpose of sexual gratification or arousal."

Defendant retained private counsel. Defense counsel did not demand a bill of particulars.

¶ 5        Prior to trial, the State filed a motion to admit statements pursuant to section 115-10 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115-10 (West 2018)). The State sought to admit statements made by V.P. to forensic interviewer Samantha Wike. Following a hearing and the parties' submission of written arguments, the court granted the State's motion. The matter proceeded to a bench trial.

¶ 6        Officer Lindsey Kenney testified that on June 16, 2019, he received a complaint of a sexual assault that had occurred approximately two years prior. Rachel Z. disclosed that she had recently learned that on multiple occasions defendant inappropriately touched her daughter, V.P. V.P. told Rachel that on more than one occasion defendant touched her vaginal area and forced

her to touch his penis. V.P. told Kenney that she thought the sexual abuse occurred more than five times.

¶ 7        Rachel testified that V.P. was born on March 5, 2008. Rachel married defendant in June 2015. She filed for divorce in 2018 and it was finalized in June 2019. She had obtained an order of protection (OP) against defendant in November 2017 because defendant physically abused her. Defendant violated the OP. He stalked Rachel at work, and on one occasion broke into her home and strangled her in front of her children.

¶ 8        After the divorce was finalized, V.P. informed Rachel that defendant had previously abused her. V.P. explained that defendant had sexually abused her when Rachel was working evenings in Burlington, Iowa in 2017. Rachel and V.P. reported the abuse to the police.

¶ 9        On cross-examination, defense counsel elicited testimony regarding Rachel's relationship with her ex-husband, Adolfo P. Rachel testified that she divorced Adolfo because he was too strict with her children. Rachel stated there was a domestic violence incident in 2017. Defense counsel asked "[i]s that the incident where you slapped [defendant] and cut him above his eye?" Rachel did not recall that happening. Rachel clarified that was a separate incident. Rachel testified that defendant was required to pay child support and was late on his payments. She never attempted to collect the late payments from Adolfo. Defense counsel again asked whether she attempted to force Adolfo to make the late payments, and the State objected on relevance grounds. Defense counsel said "Judge, our whole theory is that [Rachel's] motivation for having [V.P.] make these allegations. Child support is another fact in that."

¶ 10       On re-direct, Rachel testified that defendant was born in 1984. She did not direct V.P. to make the allegations against defendant. Defendant had injured Rachel's finger while trying to

take the house keys. Defendant attempted to force Rachel to have sexual intercourse in front of her young children.

¶ 11    Investigator Terry Hepner testified that Officer Kenney referred a report of sexual assault against a child to him. Hepner scheduled an interview with V.P. on June 18, 2019. Wike conducted the interview. Hepner observed the interview from another room. On cross-examination, Hepner testified that he did not interview defendant. Hepner did not verify Rachel's work schedule through her employer.

¶ 12    V.P. testified that she was born on March 5, 2008. V.P. was 13 years old at the time she testified. Rachel is her mother and defendant was her stepfather. At some point, V.P. lived with Rachel and defendant in Monmouth. V.P. identified defendant in court. On more than one occasion when Rachel worked late, defendant grabbed V.P. from her bedroom and brought her to his bedroom where he removed their clothes. Defendant then touched V.P.'s body and forced her to touch his body. Defendant forced V.P. to touch his penis. Defendant touched V.P.'s buttocks and vagina with his penis. V.P. testified that defendant scared and frightened her. No one witnessed defendant's inappropriate touching of V.P. V.P. did not remember whether defendant's penis was erect when he touched her. V.P. stated that she testified truthfully, and that Rachel did not tell her what to say.

¶ 13    On cross-examination, V.P. testified that defendant touched her buttocks with his penis. Defendant did not have sexual intercourse with V.P. Defendant inappropriately touched V.P. several times over the years. V.P. did not inform Rachel of the inappropriate touching.

¶ 14    On redirect, V.P. testified that most of the incidents happened when defendant lived with her, but one incident occurred after he had moved out. No one witnessed the incidents and V.P. did not tell her siblings or Rachel. Eventually, V.P. felt comfortable enough to tell Rachel.

4

¶ 15 Former Children's Advocacy Center (CAC) forensic interviewer Wike testified that she interviewed V.P. Wike testified that V.P. recalled answers and answered questions consistent with the ability of other children her age. Wike identified in court People's exhibit Nos. 1A and 1B. Wike used exhibit Nos. 1A and 1B when she interviewed V.P. Exhibit No. 1A showed an anatomical drawing of a male with blue circles around the penis and hand. Exhibit No. 1B showed an anatomical drawing of a female with blue circles around the vagina, buttocks, and breasts. Both exhibits included red and blue markings. Wike had drawn the markings in red and V.P. had drawn the markings in blue. The court admitted both exhibits into evidence. Additionally, the court admitted the CAC interview into evidence and it was played for the court.

¶ 16 In the interview, Wike and V.P. discuss body parts. Wike brings out an anatomical drawing of a female. Wike labels each body part with a red marker based on the name V.P. provides for each part. V.P. states that she is being interviewed because she was inappropriately touched. V.P. circles with a blue marker the parts of her body that were inappropriately touched. V.P. circles the vagina, breasts, and buttocks. V.P. states that defendant touched her. She did not tell anyone until recently, when she told Rachel. It happened several times. Defendant touched V.P. under her clothes. Defendant touched V.P. with his hands and grabbed her hand and placed it on his private part.

¶ 17 Wike sets up an anatomical drawing of a male. V.P. circles in blue the male's penis as the private part defendant made her touch. V.P. states that defendant made her touch his private part under his clothes. Defendant grabbed her at night when Rachel was at work and brought her to his bedroom. V.P. attempted to escape. V.P. states she lay on the bed and defendant mostly touched her vagina.

¶ 18    V.P. states these incidents happened from second through fourth grade. Defendant touched her with his penis, and it touched her vagina. V.P. states that several times defendant would lie on top of her and hold himself up while he touched her with his penis and his penis touched her vagina. She did not remember whether defendant placed his penis inside of her. These incidents would last several minutes. Afterward, defendant would return V.P. to her bedroom.

¶ 19    The State rested, and the defense called defendant to testify. Defendant testified that he met Rachel through Facebook in 2011. Rachel told him she was separated from her husband and had one child. In 2012, defendant learned Rachel had three children when they met in person. At that time, they started dating. They married on June 29, 2015. Defendant worked in Marshalltown, Iowa in 2015. He lived in Marshalltown during the week and returned to Monmouth on the weekends. Defendant stopped working in Marshalltown in December 2015 and found employment in Monmouth. After approximately four to five months, he started work in Burlington. Defendant and Rachel carpooled to work. After approximately eight months, defendant gained new employment in Mount Pleasant, Iowa. He lived with Rachel and the children in Monmouth until they separated at the end of 2017.

¶ 20    Defendant treated Rachel's children as if they were his own. Defendant attended school activities, played with the children at the park, and brought the children to restaurants. Defendant traveled with the children to California to see their biological father. Defendant was allowed visitation after the separation after he had taken "some classes." V.P. visited her siblings at defendant's house after the separation. She did not appear frightened by defendant. Defense counsel asked, "And between January 1st of 2014, and December 31st of 2017, did you ever place your penis on [V.P.'s] vagina?" Defendant answered "No."

¶ 21    Following closing arguments, the court ruled:

"the State has to establish beyond a reasonable doubt is that the defendant, within the jurisdiction of the Court, at a time when the defendant was seventeen years of age or older, had contact between the sex organ and a body part of a person who was under thirteen years of age at that time for the purpose of sexual gratification or arousal. And as both [parties] have acknowledged, that is often proved by circumstantial evidence or inferred by the actions of a defendant. And there was no other purpose that was put forward by way of evidence to establish that this was some sort of nonsexual behavior. ***

*** [A]ll the State has to prove is that the alleged offense occurred within the statute of limitations. And for purposes of establishing the ages of the parties there was sufficient evidence that the offense very likely could have occurred in 2017, up until the point when the evidence was that the Defendant left the marital residence.

So the other elements boil down to the credibility of the alleged victim. And the evidence that I heard was that the alleged victim didn't come forward with the allegations until after the parties were divorced and it wasn't the result, as I heard the evidence, of any sort of coaching or incentive. There didn't seem to be any reason when she came forward in 2019, to make up these allegations. And I'm not really sure why things like work schedules and an interview perhaps of [Rachel's boyfriend] who apparently was there when the initial allegations were made and could have explained maybe the circumstances or corroborated, I don't know why none of that information was [not] presented or why it wasn't gathered

7

over the last couple of years. But that doesn't mean that the allegations that she made were not credible. It just means that some corroboration that was available wasn't collected. And in 2019, I'm seeing the CAC interview and there was no indication in 2019 that she had an incentive to fabricate the story. As is often the case, there are some differences in her testimony which is two years after the CAC interview and that's to be understood. But again, I don't think that that affects her credibility. The fact that she was reticent to testify or to give the CAC interview doesn't mean that she was fabricating. So I believe that the State has established the elements of the offense beyond a reasonable doubt. It doesn't have to be beyond all doubt. And I would have to completely discount the victim's testimony and CAC interview in order to find there was a reasonable doubt that this had not occurred. So for those reasons I find that the State has proved the allegations in the Information beyond a reasonable doubt. I find the defendant guilty."

Defendant filed an amended motion to reconsider the court's finding of guilt.[1]

¶ 22       The presentence investigation report contained a victim impact statement completed by Rachel and signed by Rachel and V.P. The statement said that "[V.P.] has nightmares almost every night since she told me this in June 2019, she won't sleep alone, she won't play sports anymore, she will [shut] down, she feels triggered by everyone and everything, she blames herself [and] thinks no one will ever like her anymore." V.P. started counseling in July 2019. When V.P. saw defendant in town, it terrified her.

---

[1]Defendant's initial motion to reconsider is not in the record.

¶ 23    At the sentencing hearing, the court denied the amended motion to reconsider. The court admitted a letter written by V.P. into evidence. The letter read:

>   "I was sexually abused by [defendant] from about age 7-8 until I was 10 years old. This has affected me by ruining my childhood. During my childhood I could have been playing and doing other things kids did, but most of the time I was worried [defendant] would want to do something to me. Over the two years he was not in jail I feared I would see him if I went anywhere in Monmouth. When [defendant] was found guilty on September 21st, I felt relieved and like I could breathe again."

In aggravation, the court found that defendant's conduct caused serious psychological harm, defendant had a prior criminal history, the sentence was necessary to deter others, and defendant held a position of trust and supervision at the time of the offense. In mitigation, the court found that defendant's conduct did not cause serious physical harm to the victim. The court noted "that the mother wasn't there, that little girl was going to bed wondering if you were going to come in and pick her up and carry her into the other room. *** So, I consider the fact that that little girl was facing fear and apprehension every night when she went to bed, and she's going to be facing the consequences of your actions for probably the rest of her life." The court sentenced defendant to 20 years' imprisonment. Defense counsel did not file a motion to reconsider sentence. Defendant appeals.

¶ 24                                    II. ANALYSIS

¶ 25    Defendant raises four main arguments on appeal: (1) the State did not prove his guilt beyond a reasonable doubt, (2) he received ineffective assistance of counsel, (3) the court erred

9

in admitting the People's exhibit Nos. 1A and 1B, and (4) his sentence is excessive. We address each argument in turn.

¶ 26                          A. Sufficiency of the Evidence

¶ 27        Defendant argues the State failed to prove him guilty beyond a reasonable doubt of predatory criminal sexual assault of a child because the evidence presented did not prove the element of sexual gratification, and V.P.'s testimony was uncorroborated and not credible.

¶ 28        When a defendant makes a challenge to the sufficiency of the evidence, " 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. Collins*, 106 Ill. 2d 237, 261 (1985) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "Under this standard, a reviewing court will not substitute its judgment for that of the trier of fact on issues of the weight of evidence or the credibility of witnesses." *People v. Cooper*, 194 Ill. 2d 419, 431, (2000). "[T]he reviewing court must allow all reasonable inferences from the record in favor of the prosecution." *People v. Cunningham*, 212 Ill. 2d 274, 280 (2004). "A conviction will be reversed only where the evidence is so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of the defendant's guilt." *People v. Belknap*, 2014 IL 117094, ¶ 67. "This same standard of review applies regardless of whether the evidence is direct or circumstantial [citation], and regardless of whether the defendant receives a bench or jury trial." *Cooper*, 194 Ill. 2d at 431.

¶ 29        "A person commits predatory criminal sexual assault of a child if that person is 17 years of age or older, and commits an act of contact, however slight, between the sex organ or anus of one person and the part of the body of another for the purpose of sexual gratification or arousal of the victim or the accused, or an act of sexual penetration, and *** the victim is under 13 years

10

of age." 720 ILCS 5/11-1.40(a)(1) (West 2018). Sexual gratification can be established by circumstantial evidence, and the trier of fact may infer a defendant's intent from his conduct. *People v. Burton*, 399 Ill. App. 3d 809, 813 (2010). Additionally, sexual gratification can be inferred solely from the nature of the act. *Id.*

¶ 30    Here, V.P. indicated that defendant inappropriately touched her on her vagina, breasts, and buttocks. Defendant forced her to touch his penis. Defendant touched V.P.'s buttocks and vagina with his penis. In its ruling, the court noted that sexual gratification is "often proved by circumstantial evidence or inferred by the actions of a defendant." *Supra* ¶ 21. Additionally, the court determined that "there was no other purpose that was put forward by way of evidence to establish that this was some sort of nonsexual behavior." *Supra* ¶ 21. The court's findings are not unreasonable since the only reasonable inference from the evidence presented is that defendant placed his penis on V.P.'s vagina for sexual gratification.

¶ 31    Defendant also argues that the State failed to prove him guilty beyond a reasonable doubt because V.P.'s testimony was uncorroborated and not credible. However, "the testimony of a single witness, if positive and credible, is sufficient to convict, even though it is contradicted by the defendant." *People v. Siguenza-Brito*, 235 Ill. 2d 213, 228 (2009). Additionally, we must not substitute our judgment for that of the trier of fact on the credibility of witnesses. *Cooper*, 194 Ill. 2d at 431.

¶ 32    Here, the court found V.P.'s testimony credible. Defendant provides no argument as to why V.P.'s testimony is not credible other than it is not corroborated and is contradicted by defendant. Accordingly, we find that the State proved defendant guilty beyond a reasonable doubt of predatory criminal sexual assault of a child. See *Siguenza-Brito*, 235 Ill. 2d at 228 (a

11

reviewing court will not reverse a conviction simply because the evidence is contradicted by the defendant or because defendant claims a witness is not credible).

¶ 33                              B. Ineffective Assistance of Counsel

¶ 34       Defendant raises several ineffective assistance of counsel claims, including counsel failed to: (1) file a motion to reconsider sentence, (2) object to hearsay evidence that was not permitted by section 115-10 of the Code or another hearsay exception, (3) object to the State's elicitation of improper other crimes evidence, (4) object to several leading questions, and (5) demand a bill of particulars.

¶ 35       The sixth amendment guarantees a defendant the right to effective assistance of counsel. U.S. Const., amend. VI. "To prevail on an ineffective-assistance claim, a defendant must show that: (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defendant such that he was deprived of a fair trial." *People v. Patterson*, 217 Ill. 2d 407, 438 (2005). "[A] defendant must overcome the strong presumption that the challenged action or inaction of counsel was the product of sound trial strategy and not of incompetence." *People v. Coleman*, 183 Ill. 2d 366, 397 (1998). To establish prejudice, defendant must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Failure to satisfy either prong is fatal to the claim. *Id.* at 697.

¶ 36                              1. Motion to Reconsider Sentence

¶ 37       Defendant argues that counsel provided ineffective assistance by failing to file a motion to reconsider sentence. Defendant claims counsel's representation prejudiced him by failing to preserve any sentencing issues for appeal. However, "general failure to file a motion to

12

reconsider sentence does not *per se* amount to ineffective assistance of counsel, as some basis must exist to make the motion." *People v. Bailey*, 364 Ill. App. 3d 404, 408 (2006). Defendant does not explicitly argue a basis for the motion to reconsider sentence. But, in a separate section of his brief, defendant argues this court should reduce his sentence because the circuit court committed plain error when it considered in aggravation evidence of V.P.'s psychological harm, and that its use of psychological harm as an aggravating factor constituted a double enhancement.

> "A reviewing court is entitled to have issues clearly defined with pertinent authority cited and cohesive arguments presented; this court is not a repository into which an appellant may foist the burden of argument and research; it is neither the function nor the obligation of this court to act as an advocate or search the record for error." *People v. Edwards*, 2012 IL App (1st) 091651, ¶ 29.

Accordingly, defendant's claim that counsel provided ineffective assistance by failing to file a motion to reconsider sentence fails because defendant does not argue a basis for the motion. See *Strickland*, 466 U.S. at 697. Assuming, *arguendo*, that defendant intended the plain error argument as the basis for the motion to reconsider sentence, we also find that defendant's argument lacks merit.

¶ 38       "Generally, a factor implicit in the offense for which the defendant has been convicted cannot be used as an aggravating factor in sentencing for that offense." *People v. Phelps*, 211 Ill. 2d 1, 11 (2004). "Such dual use of a single factor is often referred to as a 'double enhancement.' " *Id.* at 12 (quoting *People v. Gonzalez*, 151 Ill. 2d 79, 85 (1992)). While defendant concedes that "psychological harm inflicted upon a child victim of a sex crime is a proper factor to consider in aggravation" (*People v. Bunning*, 2018 IL App (5th) 150114, ¶ 18),

13

he argues courts may only consider evidence of psychological harm beyond that implicit in the offense. Defendant claims there is no evidence of psychological harm occurring. This argument is without merit as the victim impact statement stated that after defendant's sexual assault V.P. suffered from nightmares and refused to sleep alone. Additionally, V.P. stated in her letter that defendant's abuse ruined her childhood because she constantly worried defendant would decide to abuse her. She felt "like [she] could breathe again" when she learned "defendant was found guilty."

¶ 39 Therefore, the circuit court properly considered that defendant's conduct caused psychological harm when it sentenced defendant. Accordingly, defendant suffered no prejudice from defense counsel's failure to file a motion to reconsider sentence as a motion to reconsider sentence would not have changed defendant's sentence. See *Strickland*, 466 U.S. at 697.

¶ 40 2. Hearsay Statements and Other-Crimes Evidence

¶ 41 Defendant argues that counsel provided ineffective assistance by failing to object to hearsay evidence.

¶ 42 Decisions about what matters to object to and when to object are generally matters of trial strategy. *People v. Graham*, 206 Ill. 2d 465, 478-79 (2003). "[A] reviewing court will be highly deferential to trial counsel on matters of trial strategy, making every effort to evaluate counsel's performance from his perspective at the time, rather than through the lens of hindsight." *People v. Perry*, 224 Ill. 2d 312, 344 (2007). "A defense counsel's decision not to object to the admission of purported hearsay testimony involves a matter of trial strategy and, typically, will not support a claim of ineffective assistance of counsel." *People v. Theis*, 2011 IL App (2d) 091080, ¶ 40. Illinois Rule of Evidence 402 (eff. Jan. 1, 2011) provides that all relevant evidence is admissible at trial. However, "a statement, other than one made by the declarant while

14

testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted" is generally inadmissible hearsay at trial. Ill. R. Evid. 801 (eff. Oct. 15, 2015), R. 802 (eff. Jan. 1, 2011).

¶ 43      Here, the alleged hearsay evidence includes testimony regarding what V.P. told Rachel, Investigator Hepner, and Officer Kenney. This evidence was not offered for the truth of the matter asserted, but for the limited purpose of how the sexual abuse came to light and the investigation transpired. Additionally, "[a] trial judge sitting as trier of fact is presumed to have considered only admissible evidence in making his decision." *People v. Jackson*, 409 Ill. App. 3d 631, 647 (2011). "This presumption can be rebutted through affirmative evidence in the record." *Id.*

¶ 44      Defendant does not provide affirmative evidence in the record to rebut this presumption. The record shows that the court did not consider the alleged hearsay evidence. Instead, the court's ruling establishes that it relied on V.P.'s testimony and the CAC interview. Based on the record, defendant cannot show that the result of the proceeding would have been different had defendant objected, and the evidence not been admitted. See *Strickland*, 466 U.S. at 694.

¶ 45      Defendant also argues that counsel provided ineffective assistance by failing to object to other-crimes evidence. The other-crimes evidence includes Rachel's testimony regarding alleged domestic abuse by defendant.

¶ 46      Illinois Rule of Evidence 404(b) (eff. Jan. 1, 2011) prohibits

> "[e]vidence of other crimes, wrongs, or acts *** to prove the character of a person in order to show action in conformity therewith except as provided by section 115-7.3 *** of the Code ***. Such evidence may also be admissible for other

15

purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

Section 115-7.3 of the Code allows the State to admit evidence of other crimes if defendant is accused of predatory criminal sexual assault of a child, and the State discloses the evidence prior to trial or the court excuses pretrial notice on good cause shown. 725 ILCS 5/115-7.3 (West 2018).

¶ 47    While the State improperly elicited testimony of other-crimes evidence, defense counsel's failure to object was sound trial strategy. The record shows that defense counsel's "whole theory" of the case was that numerous factors motivated Rachel to pressure V.P. to make the allegations against defendant. Defense counsel allowed the admission of defendant's other-crimes because it supported his theory that Rachel sought retribution against defendant through this prosecution. Attacking Rachel's credibility and providing a motive for V.P. to make the allegations against defendant were sound trial strategy, and defense counsel was not deficient. See *Theis*, 2011 IL App (2d) 091080, ¶ 40. Additionally, defendant had a bench trial, and nothing in the record indicates that the court relied on this testimony. *Supra* ¶ 47.

¶ 48                                3. Leading Questions

¶ 49    Defendant argues that counsel provided ineffective assistance by failing to object to several leading questions. Defendant argues that the majority of V.P.'s responses to the leading questions provided the factual basis for defendant's conviction.

¶ 50    " 'As a general rule, trial strategy encompasses decisions such as what matters to object to and when to object.' " *People v. Ramsey*, 2017 IL App (1st) 160977, ¶ 36 (quoting *People v. Pecoraro*, 144 Ill. 2d 1, 13 (1991)). Counsel is not ineffective for failing to object to leading

questions absent a showing of prejudice. *People v. C.H.*, 237 Ill. App. 3d 462, 475 (1992). Moreover, "leading questions may be asked of a child witness." *Id.* at 474-75.

¶ 51   Prior to trial, the State filed a motion to admit statements pursuant to section 115-10 of the Code (725 ILCS 5/115-10 (West 2018)). Section 115-10 of the Code permits the admission of hearsay testimony of young children who have been sexually abused. *Id.* The State specifically sought to admit the CAC interview. Following a hearing, the court granted the State's motion. At trial, the court admitted the CAC interview into evidence. The CAC interview contained V.P.'s description of the offense. Thus, defendant suffered no prejudice from defense counsel's failure to object since V.P.'s trial testimony was arguably cumulative. See *Strickland*, 466 U.S. at 694.

¶ 52                                4. Bill of Particulars

¶ 53   Defendant argues that counsel provided ineffective assistance by failing to demand a bill of particulars narrowing the time frame of the charge. Defendant claims counsel's failure deprived him of an opportunity to defend himself. However, "[t]he date of the offense is not an essential factor in child sex offense cases." *People v. Guerrero*, 356 Ill. App. 3d 22, 27 (2005). "As long as the crime occurred within the statute of limitations and prior to the return of the charging instrument, the State need only provide the defendant with the best information it has as to when the offenses occurred." *Id.* Accordingly, flexibility is permitted regarding the date of alleged sexual abuse of a child. See, *e.g.*, *People v. Burton*, 201 Ill. App. 3d 116, 123 (1990) (a range of two years and nine months held to be the best information possible where young children were the victims of sexual abuse); *Guerrero*, 356 Ill. App. 3d at 27 (considering children's young age and the fact that the acts occurred over a three-year period, dates were as definite as possible).

17

¶ 54    Here, the charge alleged that the offense occurred between January 1, 2014, and December 31, 2017. V.P. testified that defendant inappropriately touched her several times over the period stated in the charging instrument. In the CAC interview, V.P. stated that these incidents occurred from second through fourth grade. Given V.P.'s young age at the time of the incidents and the fact that they happened over a long period of time, the dates provided in the indictment were as definite as possible. Accordingly, defense counsel was not ineffective for failing to demand a bill of particulars because "[t]he date of the offense is not an essential factor in child sex offense cases." *Guerrero*, 356 Ill. App. 3d at 27.

¶ 55    Regardless, defense counsel's failure to demand a bill of particulars did not prejudice defendant. Defendant testified that he never placed his penis on V.P.'s vagina between January 1, 2014, and December 31, 2017. Defendant's response applies to a narrowed time frame. Accordingly, if counsel demanded a bill of particulars, the outcome at trial would be the same. See *Strickland*, 466 U.S. at 694

¶ 56                    C. People's Exhibit Nos. 1A and 1B

¶ 57    Defendant argues the court erred in admitting People's exhibit Nos. 1A and 1B. At the outset, we note that defendant does not cite to any authority for this argument.

¶ 58    Defendant acknowledges that he forfeited review of this issue, but he argues it is a reversible plain error. The plain error rule permits a reviewing court to consider a forfeited error when:

> "(1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and

18

challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). Defendant bears the burden of persuasion to show both that a clear and obvious error exists, and that reversal is warranted under one of the prongs of the plain error rule. *People v. Sargent*, 239 Ill. 2d 166, 190 (2010).

¶ 59 A trial court's decision to admit documentary evidence will not be reversed absent an abuse of discretion. *People v. Downin*, 357 Ill. App. 3d 193, 202 (2005). An adequate foundation is laid when a document is identified and authenticated. *Anderson v. Human Rights Comm'n*, 314 Ill. App. 3d 35, 42 (2000). To "authenticate a document, evidence must be presented to demonstrate that the document is what its proponent claims." *Gardner v. Navistar International Transportation Corp.*, 213 Ill. App. 3d 242, 247-48 (1991).

¶ 60 Here, forensic interviewer Wike identified People's exhibit Nos. 1A and 1B as the anatomical drawings that her and V.P. drew on together. *Supra* ¶ 15. Additionally, the CAC interview, admitted prior to trial, shows Wike and V.P. drawing on People's exhibit Nos. 1A and 1B. *Supra* ¶¶ 16-17. Accordingly, the court did not error in admitting People's exhibit Nos. 1A and 1B.

¶ 61 Additionally, defendant's plain error argument states that the drawings were prejudicial to him, and that "such drawings definitely had a very serious effect on the fairness of [defendant's] trial." Defendant neither argues that the evidence was closely balanced nor explains why the error is so serious that it affected the fairness of defendant's trial and challenged the integrity of the judicial process. See *Piatkowski*, 225 Ill. 2d at 565. Therefore, defendant forfeited plain error review when he failed to present an argument for either prong of the plain error doctrine. *Sargent*, 239 Ill. 2d at 190.

19

¶ 62                              D. Excessive Sentence

¶ 63         As noted above, defendant argues this court should reduce his sentence because the

circuit court committed plain error when it considered in aggravation evidence of V.P.'s

psychological harm, and that its use of psychological harm as an aggravating factor constituted a

double enhancement. *Supra* ¶ 37. However, defendant does not argue either prong of the plain

error doctrine. Accordingly, defendant has forfeited plain error review. See *People v. Hillier*, 237

Ill. 2d 539, 545-46 (2010).

¶ 64                                III. CONCLUSION

¶ 65         The judgment of the circuit court of Warren County is affirmed.

¶ 66         Affirmed.

¶ 67         JUSTICE McDADE, specially concurring:

¶ 68         The majority affirms the conviction of defendant, Cesar Carillo-Cruz, for predatory

criminal sexual assault of a child. I agree with that decision.

¶ 69         I write separately to comment on the analysis of the fourth of the contentions raised by

defendant in challenging the effectiveness of his counsel's representation—the failure to request

a bill of particulars. *Supra* ¶¶ 52-55. The majority finds that defendant ultimately suffered no

prejudice and therefore counsel's decision not to make the request did not satisfy the second

prong of the *Strickland* standard and did not constitute ineffective assistance. I do not disagree

with that conclusion and have, therefore, concurred. I do, however, take issue with two

arguments made by the majority in support of the conclusion because, while correct, they are not

relevant to defendant's argument and are therefore inapposite and misleading.

¶ 70         First, the majority states that " '[t]he date of the offense is not an essential factor in child

sex offense cases.' " *Supra* ¶¶ 53, 54. That statement is true and applicable to the State and its

20

burden of proof. But, for practical purposes, the bill of particulars is an important tool for the defense, providing it with more specific information about the charges to assist in structuring a defense. The fact that the State does not have to prove a specific date does not obviate the benefit to the defense of being able to show that defendant could not possibly have committed the crime on one or more of the specific dates claimed. Second, and similarly, defendant's blanket denial of *all* the alleged acts would obviously be enhanced if, again, he could completely absolve himself of one or more specific claims. The ultimate absence of prejudice in this case comes *not* from the inability of specific information to help defendant's defense, but rather from the fact that V.P. made no contemporaneous reports and she was too young to be able, or reasonably expected, to reliably recall particular dates at a time so remote from the events.